STATE, Respondent, v. SIMMONS, Appellant.

*No. State 108. Argued January 4, 1973.—Decided February 8, 1973.*

(Also reported in 203 N. W. 2d 887.)

For the appellant there were briefs and oral argument by *Percy L. Julian, Jr.*, of Madison.

For the respondent the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J. Counsel on this appeal neglected to invoke the jurisdiction of this court until January 14, 1972. This was twenty-two months after the date of the conviction and eighteen months following the imposition of the sentence. Accordingly, no matter how meritorious the appeal from these judgments might have been, this court lacks jurisdiction to review either judgment. *Babbitt v. State* (1964), 23 Wis. 2d 446, 451, 127 N. W. 2d 405. *See also: State v. Wollmer* (1970), 46 Wis. 2d 334, 174 N. W. 2d 491. The one-year period

within which the appeal involved in this action could be brought is prescribed by the statutes applicable to criminal prosecution commenced before July 1, 1970, secs. 958.06 (2) and 958.13, Stats. 1967. Only the defendant's appeal from the order denying the motion for a new trial is timely. The appeal from the judgments must be dismissed.

When an appeal is taken from an order denying a new trial, the test to be applied to the trial court's decision is whether there has been an abuse of discretion. The order will not be reversed unless an abuse of discretion has been clearly shown. *Logan v. State* (1969), 43 Wis. 2d 128, 133, 168 N. W. 2d 171; *State v. Waters* (1965), 28 Wis. 2d 148, 152, 135 N. W. 2d 768. The moving party in a motion for new trial has the obligation to raise the issues which trigger the court's discretion. It is not sufficient to merely assert that an error has occurred in the trial or that a verdict is contrary to the evidence or the law. An appeal from the denial of a motion for a new trial does not raise in this court all of the issues that would be available to an appellant were there a direct appeal from the conviction. The appeal from a denial of a motion for a new trial can only raise those questions which, with particularity, were directed to the trial court's attention in the motion or in an evidentiary hearing held upon the motion. Since we review the discretion of the trial judge, matters not brought to his attention in the proceedings on the motion for a new trial are not before us upon an appeal from the ensuing order.

The record fails to include any transcript of any argument made by defendant's counsel in support of his motion for a new trial. One moving for a new trial has the obligation to include in his motion allegations, prima facie at least, to show reasons for a new trial. It is not sufficient to make assertions of a general

nature. Moreover, where the allegations made can only be supported by the submission of additional evidence, an evidentiary showing must be made either by affidavit or by oral testimony.

Insofar as the record reveals, only one evidentiary matter was submitted to the trial judge in support of the motion. An affidavit was submitted which purported to show that, prior to the trial, defense counsel had been denied access to the prosecution's complaining witness and to her mother. The affidavit signed by Bryan Borman, who stated that he was working as a representative of the Dane County Legal Services, the organization that was appointed by the trial court to provide the defendant with counsel, stated that he attempted to talk to the victim "regarding the arrest of Ronald Simmons." He stated that the victim refused to talk to him because "she was ordered not to talk to anyone representing Ronald Simmons unless her mother was present." He further stated that, upon calling the girl's mother to ask that he talk to mother and daughter together, he was told, "Assistant District Attorney John Daley had instructed her not to talk to anyone about the case except in his presence." This affidavit is the only evidentiary underpinning for the allegation in the motion:

> "That the state through the office of the district attorney unlawfully interfered with defendant's rights to interview and question prosecution witnesses in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 7 and 8 of the Wisconsin Constitution, by instructing the state's witnesses to refuse to discuss the case with the defendant's attorney and his investigators."

There is no evidence of record to show that the instructions allegedly given by the prosecutor to the victim's mother were in fact made.

This court has held that an accused's counsel has the right to interview prosecution witnesses before trial. In *State v. Watkins* (1968), 40 Wis. 2d 398, 162 N. W. 2d 48, we said that the prosecution cannot deny such access, although the witness cannot be compelled to submit to such interview against his wishes. In *Watkins,* we found no denial of access to a prosecution witness, because the witness himself did not wish to talk to defense counsel.

The right of an accused to interview prosecution witnesses is recognized by the federal courts. *United States v. Long* (8th Cir. 1971), 449 Fed. 2d 288, 295; *United States v. Miller* (2d Cir. 1967), 381 Fed. 2d 529, 538, fn. 7; *Callahan v. United States* (9th Cir. 1967), 371 Fed. 2d 658. *Gregory v. United States* (D. C. Cir. 1966), 369 Fed. 2d 185, 188, supports the defendant's assertion here that it is a denial of due process for a prosecutor to instruct government witnesses not to talk to defense attorneys unless the prosecutor is present. A similar constitutional basis was relied upon in *Coppolino v. Helpern* (D. C. N. Y. 1967), 266 Fed. Supp. 930, 935. Moreover, according to the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft, 1971), Supplement page 6:

"A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which he has the right to give." Standard 3.1 (c).

The rationale behind this standard is discussed on page 78 of the *Standards Relating to The Prosecution Function and The Defense Function:*

"Prospective witnesses are not partisans; they should be regarded as impartial spokesmen for the facts as they see them. Because witnesses do not 'belong' to either

party, it is improper for a prosecutor, defense counsel, or anyone acting for either to suggest to a witness that he not submit to an interview by opposing counsel. It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel). In the event a witness asks the prosecutor or defense counsel or a member of their staffs whether it is proper for the witness to submit to an interview by opposing counsel or whether he is under a duty to do so, the witness should be informed that, although he is not under a legal duty to submit to an interview, it is proper and may be the duty of both counsel to interview all persons who may be witnesses and that it is in the interest of justice that the witness make himself available for interview by counsel.

"Counsel may properly request an opportunity to be present at opposing counsel's interview of a witness, but he may not make his presence a condition of the interview."

Based upon our holding in *Watkins*, we conclude that Standard 3.1 (c) properly reflects Wisconsin law, and we adopt that standard as a guide to future conduct by prosecutors.[1] Nevertheless, while defendant herein asserts a proper rule of law, the evidence falls short of showing a constitutional deprivation and is not persuasive in convincing us that the trial judge abused

---

[1] As the rationale set forth in the Commentary makes abundantly clear, defense counsel has the same obligation in relations with prospective witnesses as the prosecutor. Although the conduct of defense counsel in this respect is not raised by the facts of the case, we deem it appropriate to adopt Standard 4.3 (c) relating to the defense function (Supplement to ABA *Standards Relating to The Prosecution Function and The Defense Function*, p. 16):

"A lawyer should not discourage or obstruct communication between prospective witnesses and the prosecutor. It is unprofessional conduct to advise any person, other than a client, or cause such person to be advised to decline to give to the prosecutor or counsel for co-defendants information which he has a right to give."

his discretion when he failed to grant a new trial on the basis of this evidence. The affidavit is completely hearsay and was not underpinned by any evidence adduced at the hearing on the motion or by any other affidavits. Further evidence, if available, should have been submitted at the hearing on the motion.

Neither the victim nor her mother testified or signed an affidavit to show that they had received the alleged instructions from the assistant district attorney, nor was the prosecutor called either to affirm or to deny that he had given such instructions. The defendant relies upon *Gregory v. United States, supra,* but there the prosecutor appeared in court and admitted that he had given the instructions to the witnesses. Moreover, given a literal interpretation, the affidavit does not show a complete denial of access to the prosecution witnesses. Rather, it indicates that the witnesses were asked not to testify out of the presence of the prosecutor. It would not have been improper for the prosecutor to ask to be present, although he could not insist on that condition. *Standards* (Commentary), *supra,* page 78. The showing made in the trial court was insufficient to indicate that the defendant had been denied his constitutional rights to access to prosecution witnesses. The trial judge did not abuse his discretion in denying a new trial on this ground.

Additionally, in the motion for a new trial, the defendant claims his court-appointed counsel was ineffective because he failed to raise certain objections to evidence and to other alleged constitutional deprivations. This court has repeatedly stated it will find trial counsel ineffective only when it is shown that the representation was so inadequate and of such low competence that it amounted to no representation at all and reduced the trial to a sham and a mockery of justice. *Swonger v. State* (1972), 54 Wis. 2d 468, 474, 195 N. W. 2d 598;

*Quinn v. State* (1972), 53 Wis. 2d 821, 825, 193 N. W. 2d 665; *Milburn v. State* (1971), 50 Wis. 2d 53, 65, 183 N. W. 2d 70.

In this case the girl's clothing and the specimens taken from her body constituted important elements in the evidentiary web against the defendant. These items were collected at the hospital and were later analyzed at the State Crime Laboratory. These specimens indicated that the victim had recently had intercourse, for they revealed seminal residues on her clothing and in her vagina. Moreover, a combing was made of her pubic hair, which revealed foreign hair that might have been of a Negroid origin. This evidence was highly corroborative of the victim's statement. In the motion for a new trial, the defendant alleged that these exhibits were erroneously admitted "in that there was no proper chain of custody or escort established." Trial counsel's failure to object to this evidence on the ground that a proper chain of custody had not been established underpins the defendant's principal claim of incompetency of counsel.

It is apparent from a review of the trial transcript that one link in the chain of custody was omitted in the prosecution's proof. There was no explanation of how the specimens got from the tissue lab refrigerator at the hospital to a desk, where they were picked up by a representative of the Madison Police Department for delivery to the State Crime Laboratory. There was, however, testimony that each of the specimens had been sealed in a bag and that the seals were intact at all times and did not reveal evidence of tampering. Thus, while an objection to the introduction of the evidence could have been made, it is by no means certain that a trial judge would be obligated to exclude the testimony. McCormick points out that the degree of proof necessary to establish a chain of custody should be a matter within

the trial court's discretion. McCormick, *Evidence* (2d ed.), p. 527, sec. 212. Moreover, this case is not unlike *State v. McCarty* (1970), 47 Wis. 2d 781, 177 N. W. 2d 819, where we held that it was not fatal to the chain of custody to not call one of the custodians of the real evidence submitted at trial. In that case, as in this one, there was nothing to show that the evidence was tampered with or had been altered. While it would have been within the discretion of the trial judge to exclude the evidence had a proper objection been made, it was within his discretion to admit such exhibits, even over objection, if there were no doubt that the properly labeled and identified samples were the ones relevant to this prosecution.

The question, however, is not whether the evidence could have been excluded, but whether the failure of defense counsel to object to the introduction of such evidence constituted representation of such low competence as to amount to no representation at all. We conclude that it did not. We point out that the trial judge at the time of sentencing, after the substitution of trial counsel, stated he "felt . . . the representation was competent." Moreover, we cannot conclude that the failure to object was necessarily the result of counsel's incompetency or ignorance, rather than being a deliberate strategy. Certainly, it is not uncommon for experienced counsel to forego even proper objections when he knows that persistent objections may seem petty in the eyes of the jury and the deficiency, particularly in the authentication of evidence, probably can be supplied by the prosecution. The fact that the defendant's counsel at trial did not object to evidence that may have been excluded does not ipso facto show incompetence.

A review of the trial transcript indicates that the deficiency in the chain of custody could not have been realized until after both the doctor and the hospital

technicians had testified at length about the samples they had collected. Had the evidence been excluded at that point, an inference well may have arisen in the jury's mind, despite probable trial court admonitions, that the evidence excluded was more damaging to the defendant than it proved to be. The attempted exclusion would likely highlight the significance of the evidence. All the physical and laboratory evidence showed was that the girl had intercourse a short time prior to the examination of her vaginal secretions and that the pubic hairs that were revealed by the vaginal combings did not exclude the inference that she had had intercourse with a black person. This evidence, though damaging, was merely cumulative to the positive testimony of the alleged victim that she had had intercourse with the defendant at the time charged in the information. We cannot assume that trial counsel's failure to object to this evidence was the result of incompetence or is evidence of ineffective counsel. It well might have been a strategic waiver under the circumstances of the order of proof.

We think it inappropriate for counsel on appeal to attack the competency of trial counsel on an unsupported assumption that his conduct at trial was not the result of carefully reasoned professional judgment. When the competency of trial counsel is questioned, it is incumbent upon one who seeks to show that incompetency to give notice to trial counsel that his handling of a criminal matter is being questioned on post-trial or postconviction proceedings. We do not believe that the professional competence of a lawyer should be determined *ex parte* on the unsupported allegations of a disappointed defendant that another choice of strategy might have been preferable.

We do not intend, however, to convey the idea that subsequently appointed counsel should hesitate to seek

relief for a convicted defendant if after thorough investigation he is satisfied that, in an earlier phase of the case, a defendant was not afforded effective counsel. On the contrary, it is the positive duty of subsequent counsel to pursue this issue, if it is indeed appropriate. We believe, however, that an attack on the professional competence of another attorney should not be undertaken lightly and should not be predicated upon postconviction counsel's preference for what he might have done in the same situation. Where a counsel's conduct at trial is drawn into question, he should be notified and have the opportunity to appear at the hearing in which his conduct is challenged.

In order to encourage the review of cases where the effectiveness of counsel is properly questioned and to discourage situations where the competency of trial counsel is questioned upon specious or hypothetical grounds, we approve and adopt Standard 8.6 of the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function,* page 170. It provides:

"8.6 Challenges to the effectiveness of counsel.

"(a) If a lawyer, after investigation, is satisfied that another lawyer who served in an earlier phase of the case did not provide effective assistance, he should not hesitate to seek relief for the defendant on that ground.

"(b) If a lawyer, after investigation, is satisfied that another lawyer who served in an earlier phase of the case provided effective assistance, he should so advise his client and he may decline to proceed further.

"(c) A lawyer whose conduct of a criminal case is drawn into question is entitled to testify concerning the matters charged and is not precluded from disclosing the truth concerning the accusation, even though this involves revealing matters which were given in confidence."

In the instant case, counsel on this appeal has not only failed to elicit the testimony of trial counsel, but

in addition has failed to show that the trial conduct was the result of incompetence and not sound trial strategy.

In the case at bar, new counsel was appointed prior to appeal. He made the motion for new trial. The evidentiary inquiry into the effectiveness of prior counsel should have been had in that proceeding. As is often the case, however, the question is not confronted until new counsel has been appointed by this court and a writ of error issued. In that event and upon application by appointed counsel, the cause may be remanded to the trial court for an evidentiary inquiry in respect to effectiveness of prior counsel.

There are additional contentions made in respect to the adequacy of counsel. Defendant asserts that counsel at trial could, and should, have impeached the testimony of the state's expert that the hair combings taken from the victim's pubic area contained Negroid pubic hair. We have only the assertion of counsel on this appeal that such expert testimony was without accepted scientific foundation. This court cannot take judicial notice of the fact asserted by appeal counsel that the expert witness at trial could not have come to the conclusion that the hair combings were Negroid hair. We simply do not know. The qualifications of the expert were impressive, and we cannot say as a matter of law that her opinion was not based upon scientific fact. Moreover, a review of the record indicates that all that was really proved was that the physical samples did not exclude the foreign pubic hairs as being those of a black person. This clearly was the understanding of the trial judge when he stated at the time of sentencing, "There was also evidence of comb hairs and pubic hairs, both male and female, and a type that were consistent with both white and black people."

Moreover, the trial transcript reveals that defense counsel thoroughly cross-examined the state's expert

witness and, by careful questioning, made it clear that some of the factors relied upon by the expert to support her assertion that the hairs were that of a black person were not inconsistent with those of a Caucasian having certain physical characteristics.

The important consideration on this appeal, however, is that present counsel did not submit for the exercise of the trial judge's discretion any evidence that tended to show or to prove that the expert opinion was contrary to established scientific facts. Accordingly, there was no abuse of discretion and there could have been none in this respect.

It is also argued that the trial attorney permitted the state to withhold exculpatory evidence—the trousers taken from the defendant. Relying upon *Brady v. Maryland* (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, appeal counsel contends that the failure of trial counsel to demand the production of this evidence showed inadequate representation and permitted the nonproduction of evidence that would have shown that pubic hairs taken from the defendant's trousers would not have matched those that were combed from the girl. However, the trousers—the very evidence in question— were sought to be introduced by the state, but were excluded by the trial judge. Moreover, the defendant's attorney at arraignment made a demand for the production of any exculpatory evidence. None was produced, and there is no showing that there was any exculpatory evidence withheld.

Inadequacy of counsel is also claimed because defense counsel, after allegedly being denied access to the victim and her mother, failed to seek the court's assistance to interview these crucial witnesses. However, a preliminary examination was held in this case, and the two witnesses, the victim and her mother, were either cross-examined vigorously or called adversely. There

was a complete opportunity to carefully question these witnesses on the record prior to trial. There was no necessity of asking the court's assistance in interviewing these witnesses because, after the preliminary examination, such interviews were unnecessary. The record of the preliminary examination was ably used at trial to probe the credibility of these very witnesses.

Although the posture of this appeal and the failure of appeal counsel to make a timely resort to the jurisdiction of this court make it unnecessary for us to review the record *in toto,* we nevertheless have done so. The entire proceedings reveal that the defendant had a vigorous and able defense throughout the trial proceedings. We agree with the trial judge's statement that the representation was competent.

The record also shows that the only significant issue at trial was whether the jury was to give credence to the testimony of the complaining witness or to the defendant. They were entitled under the disputed state of the facts to believe either. The testimony of the victim was credible and corroborated in part by the defendant's own testimony. Under this state of the record, it is apparent that the conviction and the sentence, the appeals from which we are obliged to dismiss, would have been affirmed if timely made. We have, however, only the jurisdiction to consider the order denying the motion for a new trial. The trial judge did not abuse his discretion in denying the motion.

*By the Court.*—Appeal from the judgments dismissed; order affirmed.