[Nos. 15786-1-II; 16495-7-II.    Division Two.    August 11, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. ANSEL
WOLFGANG HOFSTETTER, *Appellant.*

*In the Matter of the Personal Restraint of* ANSEL
WOLFGANG HOFSTETTER, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. DWAYNE
SATTERFIELD, *Appellant.*

*David G. Skeen,* for appellant Hofstetter (appointed counsel for appeal).

*John S. Abolofia,* for appellant Satterfield (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *James B. Roche, Deputy,* for respondent.

MORGAN, C.J. — Dwayne Hussell Satterfield and Ansel Wolfgang Hofstetter appeal their convictions for first degree aggravated murder. Hofstetter also brings a personal restraint petition. We affirm the appeals and dismiss the petition.

On August 14, 1991, the State charged Satterfield and Hofstetter[1] with the aggravated first degree murder of Linda Denise Miller. Essentially, it alleged that Satterfield and Hofstetter planned to rob the Jackpot convenience store in Orting, and to kill the store clerk so there would be no witnesses. It further alleged that Satterfield and Hofstetter had committed the robbery while accompanied by Olivia Chambliss and Virden Leonard, that Miller was the store clerk on duty at the time, and that Hofstetter had killed Miller by shooting her twice in the head.

Chambliss and Leonard[2] were also arrested, but their cases were soon resolved by written plea agreements. Each agreed to plead guilty in adult court to conspiracy to commit first degree murder, to testify truthfully against Satterfield and Hofstetter, and to "cooperate fully with the State and all law enforcement officers in providing information about the case and any other criminal activity involving Dwayne Sat-

---

[1]Hofstetter was 16, but the juvenile court declined jurisdiction over him.

[2]Chambliss and Leonard were juveniles, but they agreed to be prosecuted in adult court.

terfield [and] Ansel Wolfgang Hofstetter".[3] The State agreed not to file more severe charges, and to recommend 180-month sentences.

Satterfield's and Hofstetter's cases were severed and assigned to different judges. Satterfield's trial was set for September 26, 1991, and Hofstetter's for January 21, 1992.

On September 25, 1991, Satterfield's attorney complained to the trial court that he was having difficulty interviewing Leonard. He related that he had previously met with Leonard and Leonard's attorney at the Pierce County juvenile facility. A prosecutor had also been present. Leonard and Leonard's attorney had agreed that Leonard could be interviewed by the defense without a prosecutor present. The prosecutor had refused to leave, however, and the interview had been aborted.

Satterfield's attorney also complained that after another attorney in his firm had interviewed Chambliss without a prosecutor present, the prosecutor had sent letters to Chambliss's and Leonard's attorneys, demanding that neither Chambliss nor Leonard be interviewed by the defense without a prosecutor present. Dated September 23, 1991, the letter to Chambliss's attorney stated in part:

> I consider Ms. Chambliss[] participation in a defense interview without the prosecutor present (or without adequate notice to be present) a serious violation of the spirit and terms of the plea agreement, wherein Ms. Chambliss agreed to give her full cooperation to the State.
>
> Frankly, I cannot recall another instance when a person who has entered into such a plea agreement with the prosecutor has not insisted upon the prosecutor's presence when the prosecutor expressed a desire to be present at such an interview by opposing counsel. . . .
>
> We would rather focus on Mr. Satterfield and Mr. Hofstetter whom we feel are most culpable in the terrible and senseless murder of the Orting convenience store sales clerk. However, we feel that the term "full cooperation" means just what the words imply, and that Chambliss is in breach of the plea agreement, bringing some of our focus back on her. Therefore, in order to assure us that your client inten[d]s to fully cooperate, I would like a letter from you acknowledging that your client will not discuss the facts of this case with anyone present

<hr>

[3]Exs. 23, 24.

except yourself unless a deputy prosecutor is present also. Absent such a statement from you, we are forced to assume that you do not wish to proceed under the prior plea agreement.[4]

Also dated September 23, 1991, the letter to Leonard's attorney was about the same, except it reflected that Leonard had not yet been interviewed.

Satterfield's attorney argued that the State's conduct improperly obstructed his ability to interview witnesses, and violated both the prosecutor's ethical responsibilities and the rules of court governing discovery. He asked the court for an order allowing him to interview Leonard without a prosecutor being present. The State argued that there had been a miscommunication between the prosecutor and the attorneys for Leonard and Chambliss with regard to the "cooperate fully" language in the plea agreements, that the miscommunication had been cleared up, and that Leonard and Chambliss would now insist on the presence of a prosecutor at any interview by defense counsel. The trial court ruled that defense counsel could interview Leonard without a prosecutor present, unless Leonard asked otherwise.

Satterfield's trial commenced the next day, September 26, 1991. During a break in jury selection, Leonard's attorney appeared in court and stated that Leonard wanted a prosecutor to be present at any interview with defense counsel. Satterfield's attorney then asserted that

the prosecutor has obtained permission to be present at the interview through a threat of breach of a plea bargain withdrawing the benefi[ts] which have accrued upon this defendant by virtue of the plea bargain, even though it is not a part of the written plea bargain agreement.[5]

Satterfield's attorney made a motion to exclude Leonard's testimony, but the motion was denied. Later, another attorney for Satterfield interviewed Leonard with a prosecutor present.

---

[4]Br. of Appellant, at A1 (Satterfield).

[5]Report of Proceedings, at 134 (Satterfield).

During the rest of the trial, the State presented evidence supporting its charge that Satterfield helped Hofstetter rob the Jackpot and murder Miller. Satterfield's counsel cross-examined both Chambliss and Leonard about their plea agreements and their motives for making those agreements. Satterfield's counsel also cross-examined Leonard about the aborted interview. Leonard admitted that he initially had been willing to be interviewed without a prosecutor present, but that he had changed his mind upon learning the State would consider that a breach of his plea agreement. On October 4, 1991, the jury convicted Satterfield of aggravated first degree murder.

In Hofstetter's case, pretrial hearings were held on and after January 15, 1992. During the week of January 21, such hearings were interspersed with jury selection.

On January 21, Hofstetter's attorney apprised the trial court that the attorneys for Chambliss and Leonard had refused to let him interview their respective clients without a prosecutor present. He claimed that this obstructed his right to interview the witnesses. The State responded that the plea agreement Chambliss and Leonard had signed, with its "cooperate fully" language, required a prosecutor to be present at any interview with defense counsel. After confirming that the prosecutor was construing the "cooperate fully" language "to mean that [the witnesses] will not talk with defense counsel unless a prosecutor is present",[6] the judge ruled that Hofstetter could cross-examine each witness in this regard. Apparently, Hofstetter's attorney later interviewed the witnesses with a prosecutor present.

The State's primary witnesses were Chambliss, Leonard and a person named Travis Anderson. All three testified that Satterfield and Hofstetter had planned to rob the store and shoot the clerk. Chambliss and Leonard testified to the actual robbery, and Leonard testified to seeing Hofstetter shoot the clerk. Testifying in his own defense, Hofstetter claimed the robbery was Satterfield's idea, that he had not

---

[6]Report of Proceedings, at 45 (Hofstetter).

agreed to shoot the clerk, and that he had accidentally shot the clerk when he panicked.

During trial, Hofstetter's attorney extensively cross-examined Chambliss about her plea agreement and her motives for testifying against Hofstetter.[7] The attorney was also permitted to cross-examine Leonard about his plea agreement and his motives for testifying.

On February 3, 1992, the jury convicted Hofstetter of aggravated first degree murder. Both he and Satterfield were sentenced to life without possibility of parole. Both have appealed, and we have consolidated their appeals. Hofstetter has also filed a Personal Restraint Petition, and we have consolidated that as well.

On appeal, Satterfield and Hofstetter each argues that his due process right to a fair trial was violated because the State obstructed his ability to interview witnesses. We address two questions: (A) Was there prosecutorial misconduct? (B) If so, does it warrant reversal?

### A

According to the American Bar Association *Standards for Criminal Justice*, "[a] prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel." 1 American Bar Ass'n, *Standards for Criminal Justice* Std. 3-3.1(c), at 3.36 (2d ed. 1980) (hereinafter ABA *Standards for Criminal Justice*).[8] According to an explanatory comment:

> Prospective witnesses are not partisans. They should be regarded as impartial and as relating the facts as they see

---

[7]Chambliss acknowledged that she had initially been interviewed by Satterfield's attorney without a prosecutor present. After talking with her attorney, however, she had refused further interview in the absence of a prosecutor. She also acknowledged that she had refused to be interviewed by Hofstetter's attorney without a prosecutor present. In both cases, she said, she refused because she thought she would be in breach of her plea bargain agreement if she did not. She was asked whether she had seen the prosecutor's letter to her attorney, or was aware of its contents, and she answered no to both questions. When shown the letter in open court, she said she had not seen it before.

[8]In 1993, after the events in issue here, this standard was renumbered. *See* American Bar Ass'n *Standards for Criminal Justice: Prosecution Function and Defense Function* Std. 3-3.1(d), at 47 (3d ed. 1993). Its language was not altered.

them. Because witnesses do not "belong" to either party, it is improper for a prosecutor, defense counsel, or anyone acting for either to suggest to a witness that the witness not submit to an interview by opposing counsel. It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel). In the event a witness asks the prosecutor or defense counsel, or a member of their staffs, whether it is proper to submit to an interview by opposing counsel or whether it is obligatory, the witness should be informed that, although there is no legal obligation to submit to an interview, it is proper and may be the duty of both counsel to interview all persons who may be witnesses and that it is in the interest of justice that the witness be available for interview by counsel.

*Counsel may properly request an opportunity to be present at opposing counsel's interview of a witness, but counsel may not make his or her presence a condition of the interview. . . .*

(Footnote omitted. Italics ours.) 1 ABA *Standards for Criminal Justice* Std. 3-3.1 commentary at 3.38-3.39 (2d ed. 1980).[9]

Following these principles, the cases generally hold that it is improper for a prosecutor to instruct or advise a witness not to speak with the defense. In *Kines v. Butterworth*, 669

---

[9]This comment was changed slightly in 1993. American Bar Ass'n *Standards for Criminal Justice: Prosecution Function and Defense Function* Std. 3-3.1 commentary at 50 (3d ed. 1993). It now states:

"Prospective witnesses should not be treated as partisans. They should be regarded as impartial and as relating the facts as they see them. Because witnesses do not "belong" to either party, it is improper for a prosecutor, defense counsel, or anyone acting for either side to suggest to a witness that the witness not submit to an interview by opposing counsel.

"It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel who declines such an interview). In the event a witness asks the prosecutor or defense counsel, or a member of their staffs, whether it is proper to submit to an interview by opposing counsel or whether it is obligatory, the witness should be informed that there is no legal obligation to submit to an interview. It is proper, however, and may be the duty of both counsel in most cases to interview all persons who may be witnesses and it is in the interest of justice that witnesses be available for interview by counsel.

"It is proper for a prosecutor to tell a witness that he or she may contact the prosecutor prior to talking to defense counsel. The prosecutor may also properly request an opportunity to be present at defense counsel's interview of a witness, but may not make his or her presence a condition of holding the interview." (Footnote omitted.)

F.2d 6, 9 (1st Cir. 1981), *cert. denied*, 456 U.S. 980 (1982), the First Circuit said:

> The equal right of the prosecution and the defense in criminal proceedings to interview witnesses before trial is clearly recognized by the courts. No right of a defendant is violated when a potential witness freely chooses not to talk; a witness may of his own free will refuse to be interviewed by either the prosecution or the defense. However, when the free choice of a potential witness to talk to defense counsel is constrained by the prosecution without justification, this constitutes improper interference with a defendant's right of access to the witness. ·

(Citations omitted.) *See also United States v. Arboleda*, 929 F.2d 858, 868 (1st Cir. 1991) (quoting *Kines*).

In *United States v. Black*, 767 F.2d 1334 (9th Cir.), *cert. denied*, 474 U.S. 1022 (1985), the Ninth Circuit noted that "both sides have the right to interview witnesses before trial." 767 F.2d at 1337. However,

> a defendant's right of access to a witness "exists co-equally with the witnesses' right to refuse to say anything." *United States v. Rice*, 550 F.2d 1364, 1374 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977) . . .. The defendant's right of access is not violated when a witness chooses voluntarily not to be interviewed. While the prosecution may not interfere with a witness's free choice to speak with the defense, we agree with courts in other circuits that merely informing the witness that he may decline the interview is not improper.

(Citations omitted.) 767 F.2d at 1338.

In *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986), the Tenth Circuit said:

> We have recognized the principle that witnesses in a criminal prosecution belong to no one, and that, subject to the witness' right to refuse to be interviewed, both sides have the right to interview witnesses before trial.
>
> > "As a general rule, a witness belongs neither to the government nor to the defense. Both sides have the right to interview witnesses before trial. *Callahan v. United States*, 371 F.2d 658 (9th Cir.1967); *United States v. Long*, 449 F.2d 288 (8th Cir.1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972). Exceptions to this rule are justifiable only under the 'clearest and most compelling circumstances.' *Dennis v. United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966)."

*United States v. Cook,* 608 F.2d 1175 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *accord United States v. Pinto,* 755 F.2d 150, 152 (10th Cir.1985); *United States v. Walton,* 602 F.2d 1176, 1179-80 (4th Cir.1979). This view is bolstered by the American Bar Association's Standards for Criminal Justice § 3-3.01(c), providing that the prosecutor will not discourage or obstruct communications between prospective witnesses and defense counsel and that it is unprofessional conduct for the prosecutor to advise a prospective witness to decline to give the defense information that person has a right to give. *See also* Model Rules of Professional Conduct Rule 3.4(f).

In *Mota v. Buchanan,* 26 Ariz. App. 246, 249, 547 P.2d 517, 520 (1976), the Arizona Court of Appeals said:

A witness, however, is not the exclusive property of either the prosecution or the defendant. *United States v. Matlock,* 491 F.2d 504 (6th Cir. 1974) [*cert. denied,* 419 U.S. 864]; *United States v. Scott,* 518 F.2d 261 (6th Cir. 1975). A prosecution witness need not grant an interview to defense counsel unless he chooses to do so. . . .

Although a witness may refuse to be interviewed by defense counsel, the prosecution has no right to interfere with or prevent a defendant's access to a witness, absent any overriding interest in security. *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185 (1966); *Lewis v. Court of Common Pleas of Lebanon County,* 436 Pa. 296, 260 A.2d 184 (1969); *Martinez v. State,* 496 P.2d 416 (Okl.Cr.1972); *People v. Jackson,* 116 Ill.App.2d 304, 253 N.E.2d 527 (1969); *United States v. King,* [368 F. Supp. 130 (M.D. Fla. 1973)]; *United States v. Scott,* [518 F.2d 261 (6th Cir. 1975)]. We approve the following statement by the Pennsylvania Supreme Court in *Lewis,* supra:

"We are of the view that, *in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons*, a district attorney may not interfere with the pre-trial interrogation by a defense counsel of persons who may be called upon as witnesses in the case. Specifically, after a witness has stated that he is willing to talk with counsel for the defendant unless the district attorney objects, the district attorney may not . . . relate his lack of consent to the witness. The district attorney may not interfere with or impose his preference or judgment on the defendant. . . . We are not hereby saying that witnesses themselves may be compelled to speak with defense counsel prior to trial. We merely intend to prevent the prosecuting attorney from interfering with this aspect of the defendant's preparation for trial.

In short, "The decision as to whether the interview be private is neither for the prosecutor nor the defense counsel but rests with the witness." *Mota*, 26 Ariz. App. at 251.

In *State v. York*, 291 Or. 535, 632 P.2d 1261 (1981), the trial court found that the prosecutor had advised the State's witnesses "that it would be better if they didn't say anything" to the defense before trial. (Italics omitted.) 291 Or. at 538. The Oregon Supreme Court, quoting extensively from the Pennsylvania Supreme Court's opinion in *Lewis v. Court of Common Pleas*, 436 Pa. 296, 260 A.2d 184 (1969), held "that the state cannot order or advise a witness not to speak to the defense attorneys". 291 Or. at 543. The Oregon court, however, noted that it was not holding "that the prosecutor must encourage witnesses to consent to being interviewed by defense counsel, or that it is improper for a prosecutor to advise prospective witnesses of their right to refuse to submit to a pre-trial interview by the defense." 291 Or. at 541.

In *Story v. State*, 721 P.2d 1020 (Wyo. 1986), *cert. denied*, 479 U.S. 962 (1986), the prosecutor instructed the State's witnesses "not to talk to anyone without his approval". 721 P.2d at 1042. The defendant took exception, and the Wyoming Supreme Court held "that it was misconduct for the prosecutor to instruct the witnesses as he did". 721 P.2d at 1043.

In addition to holding that it is improper for a prosecutor to instruct or advise a witness not to speak with the defense, the cases also hold that it is improper for a prosecutor to instruct or advise a witness not to consent to a defense interview unless a prosecutor is present. In *Gregory v. United States*, 369 F.2d 185 (D.C. Cir. 1966) the prosecutor stated, "it was my advice that [the witnesses] not speak to anyone about the case unless I was present." 369 F.2d at 187. On appeal, the court held:

> We accept the prosecutor's statement as to his advice to the witnesses as true. But we know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence. Presumably the prosecutor, in interviewing the witnesses, was unencumbered by the

presence of defense counsel, and there seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews with the witnesses, what they know about the case and what they will testify to. . . .

. . . .

. . . It is not suggested here that there was any direct suppression of evidence. But there was unquestionably a suppression of the means by which the defense could obtain evidence. The defense could not know what the eye witnesses to the events in suit were to testify to or how firm they were in their testimony unless defense counsel was provided a fair opportunity for interview. In our judgment the prosecutor's advice to these eye witnesses frustrated that effort and denied appellant a fair trial.

369 F.2d at 188-89.

In *State v. Simmons*, 57 Wis. 2d 285, 203 N.W.2d 887 (1973), the defense alleged that a deputy prosecutor had instructed the victim, through her mother, "not to talk to anyone about the case except in his presence". 57 Wis. 2d at 291. The Wisconsin Supreme Court ruled that ABA "Standard 3.1 (c) properly reflects Wisconsin law, and we adopt that standard as a guide to future conduct by prosecutors." 57 Wis.2d at 293. Quoting the comment to ABA Standard 3-3.1(c), including the proposition that "[c]ounsel may properly request an opportunity to be present at opposing counsel's interview of a witness, but he may not make his presence a condition of the interview", the court said "[i]t would not have been improper for the prosecutor to ask to be present, although he could not insist on that condition." 57 Wis. 2d at 293-94. The court declined to reverse the defendant's conviction, because there was insufficient proof that the prosecutor had instructed the victim as alleged.

In *State v. Williams*, 91 N.M. 795, 581 P.2d 1290 (Ct. App. 1978), the defendant complained "that police officers would not meet with defense counsel except in the presence of an attorney from the district attorney's office." 91 N.M. at 798-99. The New Mexico Court of Appeals saw no problem to the extent the officers were not acting on instructions from the prosecutor. However,

To the extent the district attorney's office advised or encouraged the police officers not to be interviewed by defense

counsel in the absence of a prosecuting attorney, that advice or encouragement was contrary to [ABA Standard 3-3.1(c)] . . ..

91 N.M. at 799.

In *State v. Mussehl*, 408 N.W.2d 844 (Minn. 1987), the prosecutor sent two letters to each of the State's witnesses.[10] The effect was to discourage the witnesses from talking to the defense in the absence of a prosecutor. *See* 408 N.W.2d at 847. Disapproving both letters, the Minnesota Supreme Court adopted the comment to ABA Standard 3-3.1(c). 408 N.W.2d at 847.

CrR 4.7(h)(1) tends to indicate that Washington is in accord with the foregoing authorities. CrR 4.7(h)(1) provides:

> Except as is otherwise provided with respect to protective orders and matters not subject to disclosure, neither the counsel for the parties nor other prosecution or defense personnel shall advise persons other than the defendant having relevant material or information to refrain from discussing the case with opposing counsel or showing opposing counsel any relevant material, nor shall they otherwise impede opposing counsel's investigation of the case.

---

[10]The letters are too long to quote in full, but each requested that the witness not be interviewed by the defense unless the prosecutor or a law enforcement officer was present. The earlier letter said in part:

> "If you wish to talk to the defendant's investigator or to his attorney I would request that you advise me and request that I be present. It is your right to request that the prosecutor or a police officer be present for any such interview. If a defense investigator or defense attorney does not like that, you can simply tell him you don't want to talk with him under those circumstances.

> "You should be advised that based on my 10 years of experience in the criminal justice system I have seen instances where defense investigators have misrepresented or, at least the witnesses later claimed, that the defense investigator misrepresented who he was and who he was working for. If a police officer wants to talk with you I would suggest that you request to see their identification which any law enforcement officer will gladly produce. Should anyone indicate they are working on the case, you should demand to see their identification." 408 N.W.2d at 845-46.

The later letter said in part:

> "I would appreciate it if you decide to talk with the defense investigator that you request that either myself or a law enforcement officer be present. It is your right to have one of us be present for such an interview. If the defense investigator or attorney does not want to do that, you are entitled to refuse to talk with him." 408 N.W.2d at 846.

This rule "follows substantially" the language of ABA Standard 11-4.1.[11] *Mussehl*, 408 N.W.2d at 847 (discussing equivalent Minnesota rule). In turn, the comment to ABA Standard 11-4.1 cites and relies on *Gregory v. United States, supra*, which it parenthetically describes as a case in which the "prosecutor told witnesses they could talk to anyone but advised them not to speak to anyone unless the prosecutor was present". 2 ABA *Standards for Criminal Justice* Std. 11-4.1 n.4 at 11.57.

■■ Following the foregoing principles and authorities, we hold that it is improper for a prosecutor to instruct or advise a witness not to speak with defense counsel except when a prosecutor is present. We further hold, a fortiori, that it is improper for a prosecutor to plea bargain in such a way as to impose such instructions or advice on a witness. At least in the absence of extraordinary circumstances, the fact the State is prosecuting a case against the witness does not alter the State's duty not to obstruct access to the witness in the case against the defendant.

Nothing herein is intended to imply that a prosecutor may not inform a witness of his or her right to choose whether to give a pretrial interview, or of his or her right to determine who shall be present at the interview; like several of the courts quoted above, we recognize that giving information about the existence of a right is different from instructing or advising on how it should be exercised. Nothing herein is intended to imply that a trial court may not reasonably control access to a witness under appropriate circumstances, assuming of course that each party has notice and an opportunity to be heard. Nothing herein is intended to imply that only the prosecutor is bound by the principles we have discussed; we assume, though we need not hold, that defense counsel is bound as well, except when the witness is his or

---

[11]ABA standard 11-4.1 provides: "Neither the counsel for the parties nor other prosecution or defense personnel shall advise persons (other than the accused) who have relevant material or information to refrain from discussing the case with opposing counsel or showing opposing counsel any relevant material, nor shall they otherwise impede opposing counsel's investigation of the case." 2 ABA *Standards for Criminal Justice* Std. 11-4.1 at 11.56 (2d ed. 1980).

her client. *See State v. Ben,* 310 Or. 309, 316, 798 P.2d 650, 654 (1990) ("defendant's attorney also committed a discovery violation by instructing the witnesses not to speak to the prosecutor unless he was present"); *State v. Simmons,* 57 Wis. 2d at 293 n.1 ("defense counsel has the same obligation in relations with prospective witnesses as the prosecutor", pursuant to former ABA Standard 4-4.3(c)).

In the present cases, the prosecutor not only advised Chambliss and Leonard not to speak with defense counsel unless a prosecutor was present, he also threatened that if they did, the State would withdraw its plea bargain and "bring some of [its] focus" back onto them. Measured by the principles discussed above, this was prosecutorial misconduct.

## B

We turn now to the question of remedy. Generally, the cases hold that prosecutorial misconduct of the type present here will warrant reversal only if the defendant was prejudiced. *Mussehl,* 408 N.W.2d at 847; *Kines,* 669 F.2d at 9; *York,* 291 Or. at 543; *Story,* 721 P.2d at 1043; *United States v. Arboleda, supra; Ex parte State,* 624 So. 2d 1325, 1327 (Ala. 1992); *United States v. Pepe,* 747 F.2d 632, 655 (11th Cir. 1984); *see also Ben,* 310 Or. at 316-17 (absent prejudice, State not entitled to exclude witness's testimony due to misconduct of defense counsel). We agree and so hold.

Prejudice has not been shown in these cases. Satterfield's counsel ultimately interviewed Leonard, and Hofstetter's counsel ultimately interviewed both Leonard and Chambliss. Although a prosecutor was present, there is no evidence that the prosecutor's presence precluded the Defendant from pursuing a specific avenue of inquiry, caused the Defendant to reveal to the State information that was otherwise non-discoverable, or precluded the Defendant from adequately preparing to cross-examine the witness at trial. In short, nothing shows the prosecutor's presence caused anyone in the interview to behave differently than would otherwise have been the case, and thus reversal is not warranted.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD and HOUGHTON, JJ., concur.

Review denied at 125 Wn.2d 1012 (1994).