[No. 38977-1-II. Division Two. October 19, 2010.]

THE STATE OF WASHINGTON, *Petitioner*, v. CLARK RONALD MANKIN, *Respondent*.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen, Deputy*, for petitioner.

*Kent W. Underwood* (of *The Law Office of Kent W. Underwood LLC*), for respondent.

*Travis Stearns* on behalf of Washington Defender Association, amicus curiae.

*Suzanne Lee Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Erin K. Olson* on behalf of National Crime Victim Law Institute, amicus curiae.

¶1 HUNT, J. — The State appeals the trial court's order requiring police officers to submit to depositions.[1] The

---

[1] While this appeal was pending, Mankin notified us that he had filed a motion to vacate the order granting his motion to depose the officers. *See State v. Mankin*, No. 08-1-02352-6 (Pierce County Super. Ct., Wash. Aug. 10, 2009). During oral argument, the State suggested that the trial court had denied the motion to vacate. Regardless of whether Mankin intends to act on the order allowing depositions, we address this issue because we conclude that it involves a continuing and substantial matter of public importance even if the underlying controversy is now moot. *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (courts will not address a moot issue unless the issue involves matters of continuing and substantial public interest (citing *State v. Blilie*, 132 Wn.2d 484,

State argues that (1) pretrial defense interviews with police officers are private conversations that fall under RCW 9.73.030(1)(b) of the Washington State Privacy Act (Privacy Act) (ch. 9.73 RCW) and, therefore, defense counsel cannot record them without the consent of all parties; and (2) the trial court lacks authority to order such depositions under CrR 4.6(a) when police officer witnesses agree to give pretrial defense interviews but refuse to allow defense counsel to tape record them. We affirm the trial court's ruling that RCW 9.73.030(1)(b) does not apply to defense interviews of police officer witnesses; but we reverse the trial court's order granting Mankin's motion to depose police witnesses under CrR 4.6(a).

## FACTS

¶2 The State charged Clark Ronald Mankin with unlawful manufacture of methamphetamine. Mankin sought interviews with three Tacoma Police Department officers involved in the case. The officers were willing to talk to defense counsel, but when they refused to allow him to tape record them, he terminated the interviews. Mankin then moved under CrR 4.6(a) "to depose witnesses or in the alternative to record witness interviews" by either audio or video recording. Clerk's Papers (CP) at 8.

¶3 Mankin argued that (1) failure to record these interviews would be ineffective assistance of counsel; (2) a verbatim record of the interviews was vital to ensure accuracy and to provide for impeachment at trial; (3) these witnesses' ability to "arbitrarily place limits," CP at 10, on the form of the interview interfered with Mankin's right to a fair trial, right to interview witnesses, right to due process, and right to compulsory process and also obstructed defense counsel's preparation for trial; and (4) RCW 9.73.030(1)(b) permitted recording because the interviews were not private conversations. The trial court ques-

488 n.1, 939 P.2d 691 (1997); *Grays Harbor Paper Co. v. Grays Harbor County*, 74 Wn.2d 70, 73, 442 P.2d 967 (1968))).

tioned counsel about how defense interviews with police officers were normally handled. The State responded that police officers often refuse to allow tape recording. Defense counsel countered that police officers rarely refuse to be tape recorded during interviews except for Tacoma Police Department officers.

¶4 Over the State's objections,[2] the trial court granted Mankin's motion to depose the officers, ruling that (1) by refusing to allow defense counsel to tape record the interviews, the officers had refused to speak; and (2) the interviews were not private conversations protected by RCW 9.73.030(1)(b). The trial court noted that there were other ways of protecting any confidentiality interests, including protective orders and motions in limine. The State sought discretionary review of the trial court's oral ruling granting Mankin's motion to depose the officers. *See* RAP 2.3.

¶5 The next day, defense counsel presented written findings of fact and conclusions of law and a proposed order to the trial court. During the presentment hearing, the trial court agreed that it was finding that, by refusing to be taped, the officers had made themselves unavailable and that defense counsel could now depose them;[3] the trial court clarified that it was not ruling that the defense could now tape record the interviews.

¶6 On April 9, 2009, the trial court entered written findings of fact and conclusions of law, in which it concluded that: (1) defense counsel had the right to question witnesses before trial (citing *State v. Burri*, 87 Wn.2d 175, 181, 550 P.2d 507 (1976)); (2) the officers had information that was

---

[2] The State argued that (1) because a defendant does not have an absolute right to interview a potential state witness, a witness should be able to refuse the interview based on the terms of the interview; (2) defense counsel could not compel the officers to participate in the interview because they were willing to allow defense counsel to interview them but just did not want to be tape recorded; and (3) the Privacy Act applied in these circumstances even though the witnesses were police officers. The State noted that two of the officers who had refused to allow tape recording were "undercover officers," who reasonably did not want their voices recorded. Report of Proceedings (Feb. 10, 2009) at 14.

[3] We stayed the depositions pending a ruling on the State's motion for discretionary review.

material to Mankin's case; and (3) defense pretrial interviews of law enforcement officers who participated in the investigation of the case and may have information material to the State's case are not private conversations governed by the Privacy Act. Although the trial court's written findings did not include a finding that the officers had refused to discuss the case with counsel, the trial court also filed a separate order authorizing defense counsel to depose the officers; this order referred to the trial court's previous oral ruling, which included such a finding.

¶7 The State moved for discretionary review. Finding probable error, we granted the State's motion for discretionary review.[4]

## ANALYSIS

### I. RCW 9.73.030(1)(b)

¶8 The State argues that the trial court erred when it concluded that defense pretrial interviews of law enforcement officer witnesses are not "private" conversations governed by RCW 9.73.030(1)(b). This argument fails.

¶9 RCW 9.73.030(1)(b) provides that it is "unlawful for any individual . . . or the state of Washington, its agencies, and political subdivisions" to record any "[p]rivate conversation . . . without first obtaining the consent of all the persons engaged in the conversation." (Emphasis added.) "Whether a conversation is private is a question of fact but may be decided as a question of law where . . . the facts are not meaningfully in dispute." State v. Modica, 164 Wn.2d 83, 87, 186 P.3d 1062 (2008) (citing State v. Townsend, 147 Wn.2d 666, 673, 57 P.3d 255 (2002)). The parties do not dispute the facts; thus, we review this issue de novo.

---

[4] We accepted and considered amicus briefs from the Washington Defender Association and the Washington Association of Criminal Defense Lawyers and from the National Crime Victim Law Institute and the Washington Coalition of Crime Victim Advocates.

■■ ¶10 Chapter 9.73 RCW does not define the term "private." But our Supreme Court has previously found that "private" means " 'belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.' " *State v. Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996) (alterations in original) (quoting *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992)). When determining whether a communication is "private," courts consider several factors, including but not limited to (1) the subject matter of the communication, (2) the location of the participants, (3) the potential presence of third parties, (4) the role of the interloper, (5) whether the parties "manifest a subjective intention that it be private," and (6) whether any subjective intention of privacy is reasonable. *State v. Christensen*, 153 Wn.2d 186, 193, 102 P.3d 789 (2004) (citing *Townsend*, 147 Wn.2d at 673; *Clark*, 129 Wn.2d at 225-27). Here, the facts show that there was no reasonable subjective expectation of privacy in the officers' interviews.

¶11 We acknowledge that the interview locations arguably were not "public" and that there did not appear to have been any third parties present at the interviews. Nonetheless, the communications involved defense investigation of actions by public employees, namely police officers, performing their jobs, which investigation led to the public criminal prosecution of Mankin. Even though defense counsel would likely not have had to disclose his pretrial discovery witness interview notes, his notes and interview summaries could "be subject to disclosure at trial if counsel or the investigator should be called as a witness by the defense for the purpose of impeaching the testimony given by a previously interviewed prosecution witness." *State v. Yates*, 111 Wn.2d 793, 796, 765 P.2d 291 (1988) (citing *United States v. Nobles*, 422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)). Officers regularly participate in pretrial interviews with both the defense and the prosecution, and they are un-

doubtedly aware that statements they make during such interviews can and will be used for impeachment purposes.

¶12 Case law establishes that individuals can tape record conversations with law enforcement in public places. For example, in *State v. Flora*, 68 Wn. App. 802, 845 P.2d 1355 (1992), the defendant attempted surreptitiously to tape record his contact with police officers arresting him on a public street outside his home. *Flora*, 68 Wn. App. at 804-05. The State charged Flora with violating RCW 9.73.030. *Flora*, 68 Wn. App. at 805. On appeal, Flora argued that the conversation was not a private one subject to RCW 9.73.030; Division One of our court agreed. *Flora*, 68 Wn. App. at 805.

¶13 Addressing whether police officers performing their *public duties* had a privacy interest, *Flora*, 68 Wn. App. at 807, and recognizing that RCW 9.73.030 did not define "private," the court stated:

Washington courts have on several occasions construed the term ["private"] to mean:

secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly; not open or in public.

*Flora*, 68 Wn. App. at 806 (quoting *State v. Slemmer*, 48 Wn. App. 48, 52, 738 P.2d 281 (1987) (quoting *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978) (quoting Webster's Third New International Dictionary (1969)), *review denied*, 92 Wn.2d 1006 (1979)), *overruled on other grounds by State v. Frohs*, 83 Wn. App. 803, 811 n.2, 924 P.2d 384 (1996)). The court further held that this definition was consistent with the legislature's purpose in enacting the statute. *Flora*, 68 Wn. App. at 807. And it rejected the State's argument that "police officers possess a personal privacy interest in statements they make as public officers effectuating an arrest," stating, "We decline the State's invitation to transform the privacy act into a sword available for use against individuals by public officers acting in their official capacity." *Flora*, 68 Wn. App. at 807-08.

¶14 Although *Flora* addressed an attempt to record officers secretly while they were performing their public duties in a public place, the public nature of the officers' role was an important factor in both *Flora* and here. The public nature of an officer's duties does not cease to exist if a discovery-related conversation with a defense attorney takes place in a more private environment. Here, given the interviewee officers' public roles, the context of the interviews, and the officers' experience with how such interviews could be used, the officers would not have had a reasonable subjective belief that what they said during a defense interview was "private." Therefore, we agree with the trial court that RCW 9.73-.030(1)(b) does not apply in this context.[5]

¶15 In contrast to *Flora*, the State cites *State v. Grant*, 9 Wn. App. 260, 511 P.2d 1013, *review denied*, 83 Wn.2d 1003 (1973), *cert. denied*, 419 U.S. 849 (1974). In holding that conversations between a *defendant* and a police officer fell under chapter 9.73 RCW, the *Grant* court's focus was on the interviewee's status as a criminal defendant, which created a privacy interest in the defendant that the Privacy Act clearly protected. *See Grant*, 9 Wn. App. at 265. The *Grant* court stated, "[W]e note the phrase 'private conversation' is all-embracing and is broad enough to include a *confidential or privileged conversation, and one protected against disclosure under the Fourth Amendment.*" *Grant*, 9 Wn. App. at 265 (emphasis added). Here, however, the interviewees were not defendants—they were police officers. And the State fails to show that the officers had any privacy interest similar to a defendant's privacy interests in *Grant*, that there was any existing privilege, or that the conversations were in any way confidential.

---

[5] As the trial court noted, if the undercover officers had legitimate concerns about ensuring that they could not be identified in the recording, there were other methods, such as motions in limine and protective orders, that could have achieved that goal. We note, however, that even though RCW 9.73.030(1)(b) does not apply here, other statutes or court rules may preclude the surreptitious taping of witness interviews or affect the admissibility of any such recordings.

¶16  Citing *State v. Hofstetter*, 75 Wn. App. 390, 399, 878 P.2d 474, *review denied*, 125 Wn.2d 1012 (1994), the State also asserts that "the decision of whether an interview is private rests neither with defense counsel nor the prosecutor, but with the witness." Corrected Br. of Appellant at 14. But *Hofstetter* is not on point because it involved whether it was misconduct for a prosecutor to instruct witnesses not to submit to a defense interview without the prosecutor present. *Hofstetter*, 75 Wn. App. at 392-95. *Hofstetter* does not address whether the witness in that case, a codefendant who had pleaded guilty and agreed to cooperate with the State, had a reasonable subjective expectation of privacy for purposes of RCW 9.73.030(1)(b).

¶17  We hold that the trial court did not err when it determined that defense interviews of police witnesses are not private conversations under RCW 9.73.030(1)(b).[6]

## II. CrR 4.6(a)

¶18  The State next argues that the trial court erred in granting Mankin's motion to depose the police witnesses under CrR 4.6(a). The State asserts that CrR 4.6(a) does not apply when a witness is willing to discuss the case with counsel but refuses to allow counsel to record the interview. Mankin responds that an officer's refusal to be tape-recorded during a defense interview is a de facto refusal to discuss the case and that a refusal to give a taped interview interferes with his ability to obtain a fair trial. There are no Washington cases addressing whether an interviewee's refusal to participate in a taped witness interview amounts to a refusal to discuss the case with counsel under CrR 4.6(a). But a plain reading of the rule supports the State's argument.

¶19  A criminal defendant is not, as a matter of right, entitled to depose prospective witnesses before trial. *State*

---

[6] Because the trial court did not err in ruling that these interviews were not "private" for RCW 9.73.030(1)(b) purposes, we need not address the State's assertion that the Privacy Act prevented the superior court from issuing an order requiring the officers to submit to depositions.

*v. Gonzalez*, 110 Wn.2d 738, 744, 757 P.2d 925 (1988) (a court order is required before counsel in a criminal case can depose a witness). CrR 4.6(a) establishes that the trial court may order a witness to submit to a deposition *only* when certain conditions exist:

> Upon a showing [(1)] that a prospective witness may be unable to attend or prevented from attending a trial or hearing or *if a witness refuses to discuss the case with either counsel* and [(2)] that his testimony is material and [(3)] that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a party and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place.

CrR 4.6(a) (emphasis added). Because the criminal rules do not define the phrase "refuses to discuss," resolution of this issue requires interpreting the phrase.[7]

¶20 We apply the same principles to interpreting court rules that we apply to statutes. *State v. Carson*, 128 Wn.2d 805, 812, 912 P.2d 1016 (1996). And, similarly, we review de novo interpretations of a court rule. *State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005). When words in a court rule are plain and unambiguous, further statutory construction is not necessary and we apply the court rule as written. *Robinson*, 153 Wn.2d at 693. If the court rule does not define a term, we determine the plain and ordinary meaning from a standard dictionary. *State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003) (citing *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)).

¶21 *Webster's Third New International Dictionary* defines "discuss" as "to discourse about : present in detail . . .

---

[7] Mankin devotes much of his brief to whether (1) the witnesses have information material to the case, and (2) a deposition is necessary to prevent a failure of justice. But these factors are not at issue. In setting out the three relevant factors, CrR 4.6(a) uses the conjunctive "and" rather than the disjunctive "or," CrR 4.6(a); therefore, Mankin must establish *all three* factors to show that he was entitled to depose these witnesses. Mankin fails to establish that the officers refused to discuss the case with counsel, so he fails to meet CrR 4.6(a)'s requirements.

to converse or talk about : exchange views or information about . . . to make clear or open : EXPLAIN : disclose in speech." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 648 (2002). As our commissioner noted in his ruling granting discretionary review,

> No part of the definition of "discuss" places any constraints on the formality or procedure of the parties' interactions. Instead, a party discusses something if he or she talks about it, converses, exchanges views or information, or discloses information.

Commissioner's Ruling Granting Discretionary Review, *State v. Mankin*, No. 38977-1-II (Wash. Ct. App. May 11, 2009).

¶22 CrR 4.6(a)'s plain language does not address instances in which the witness will speak to counsel only under certain circumstances. And Mankin does not direct us to any other authority authorizing the trial court to order witness depositions in a criminal case. Accordingly, because Mankin failed to meet the CrR 4.6(a) conditions, we hold that the trial court erred when it ordered the depositions.[8]

¶23 Mankin also contends that a witness's refusal to give a taped interview interferes with his (Mankin's) right to effective assistance of counsel and his right to a fair trial. He contends, and we agree, that the ability of counsel to obtain evidence and to impeach witnesses effectively is part of his right to a fair trial. But even though the right to adequate trial preparation includes the right to interview witnesses in advance of trial, *Burri*, 87 Wn.2d at 181 (quoting *State v. Papa*, 32 R.I. 453, 459, 80 A. 12 (1911)), "[t]he right to interview a witness does not mean that there is a right to have a successful interview." *State v. Clark*, 53

---

[8] Mankin argues that a witness's "unreasonable" refusal to be recorded is a de facto refusal to be interviewed. Corrected Br. of Resp't at 8. But the rule's plain language does not imply that such refusal must be reasonable. And Mankin cites no authority for this argument; thus, we do not address it. *See* RAP 10.3(a)(6).

Wn. App. 120, 124, 765 P.2d 916 (1988).[9] On the contrary, a witness may refuse to give an interview.[10] *Hofstetter*, 75 Wn. App. at 397, 402. And, given this, it is logical to conclude that a witness may also choose under what conditions he or she is willing to give an interview, including whether it should be recorded.

¶24 Mankin further contends that even if the rules do not allow a deposition, a witness's refusal to give a taped interview amounts to intentional suppression of favorable evidence that will impede effective impeachment and is, therefore, a due process violation. He cites *City of Seattle v. Fettig*, 10 Wn. App. 773, 519 P.2d 1002 (1974). *Fettig* is not on point; it involved a *Brady*[11] violation based on the destruction of an existing video-tape of physical tests that officers gave to a suspected drunk driver. *Fettig*, 10 Wn. App. at 773-74. Here, there was no existing tape recording; no evidence was destroyed. And Mankin cites no authority showing that the ability to *create* the best possible impeachment evidence, namely by recording an interview, is a due process right.[12]

¶25 Although Mankin offers compelling arguments for requiring the recording of defense interviews of police officer witnesses, it is not our role to change the rule; and Mankin does not establish any other authority under which the trial court could have required the officers to be deposed. Accordingly, we hold that the trial court erred when

---

[9] *Clark* was superseded on other grounds when the legislature amended former RCW 5.60.020 (1881) in 1986. Laws of 1986, ch. 195 § 1; *see State v. C.M.B.*, 130 Wn. App. 841, 845, 125 P.3d 211 (2005).

[10] Interestingly, CrR 4.6(a) appears to undermine a witness's ability to refuse to participate in a defense interview by allowing the trial court to order a deposition if a witness refuses to talk to one of the parties. But even if the parties can compel a witness to participate in an interview or deposition, there is nothing in the rule that requires a successful or cooperative deposition; nor, as we note above, is there anything in the rule requiring that the interview or deposition be taped or video recorded without the witness's consent.

[11] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[12] Notably, if the record showed that witnesses' refusal to participate in recorded interviews was a formal policy or at the prosecutor's request, this concern might have merit; but that is not the case here.

it granted Mankin's motion to depose the police witnesses and we vacate the deposition order.

### III. ATTORNEY FEES

¶26 Mankin requests fees under RAP 2.4(g), RAP 14.2, RAP 18.1, and "because of the public interest in the decision in this matter." Resp't's Suppl. Br. at 1. He notes that this was the State's appeal, that he moved for dismissal after having moved to vacate the order for deposition, and that we denied the motion to dismiss.

¶27 RAP 2.4(g) does not address fees and costs on appeal; it merely allows us to review fees the trial court awarded after we have accepted review of a decision on the merits. RAP 14.2 provides that we will award costs to the party that substantially prevails unless otherwise noted. RAP 18.1(a) provides for attorney fees or expenses "[i]f applicable law grants" them; but Mankin has not cited any law granting such fees or expenses apart from RAP 2.4(g) and RAP 14.2. Thus, Mankin is entitled to costs only to the extent he is the prevailing party; he prevails on the secondary RCW 9.73.030(1)(b) issue but not on the primary CrR 4.6(a) issue. Because he is not the substantially prevailing party, we decline to award him attorney fees.

¶28 We affirm the trial court's ruling that RCW 9.73-.030(1)(b) does not apply to defense interviews of police officer witnesses; but we reverse the trial court's order granting Mankin's motion to depose police witnesses under CrR 4.6(a).

BRIDGEWATER and VAN DEREN, JJ., concur.

Review denied at 171 Wn.2d 1003 (2011).