FILED
COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 APR 29 AM 10: 45



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>v.<br><br>CHRISTOPHER ALEX ZUMWALT,<br><br>          Appellant. | No. 69898-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 29, 2013 |

LEACH, C.J. — Christopher Zumwalt appeals his conviction for child molestation in the first degree. He claims that the trial court erred when it denied his motion to depose a witness under CrR 4.6(a). He also challenges three of the community custody conditions that the court imposed as part of his sentence. Because we accept the State's concession that the term "pornography" as used in the judgment and sentence is unconstitutionally vague, we remand for the limited purpose of striking that term. Because Zumwalt fails to show that the witness was not willing to discuss the case with defense counsel and that the other challenged community custody conditions were unlawful, we otherwise affirm.

## Background

The State charged Zumwalt with sexually assaulting B.J.S. in Port Orchard on or between January 1, 1997, and December 15, 2002. At the time, she was less than 12 years old.

After B.J.S. reported the incident, Detective Ray Stroble from the Kitsap County Sheriff's Office spoke with Zumwalt about the allegations. The State then charged Zumwalt with one count of child molestation in the first degree.

Before trial, Zumwalt moved to depose Stroble under CrR 4.6(a). Zumwalt indicated that Stroble would not agree to be interviewed by defense counsel if the defense investigator, Jim Harris, attended the interview. Zumwalt argued that by refusing to allow Harris to participate, Stroble effectively refused to be interviewed.

In response, the State explained that Harris previously worked for the Kitsap County Sheriff's Office and had been Stroble's supervisor. During that time, the county disciplined Harris for mistreating Stroble. The State noted that Stroble advised the prosecutor's office that he was willing to discuss the case with defense counsel and any defense investigator other than Harris. Additionally, Stroble indicated that he did not object to recording the interview.

At a hearing on the motion, Zumwalt told the court that he had other investigators he could use. In denying Zumwalt's motion, the court stated, "[I]t's hardly a refusal to be interviewed. He'll interview with anybody on the face of the planet except Mr. Harris because of their personal history." The court also stated

that it would "accept Detective Stroble's agreement that any interview with anybody else of your choosing will be recorded."

A jury convicted Zumwalt as charged. The court imposed a standard range sentence, including 17 community custody conditions. Zumwalt appeals.

## Analysis

Zumwalt alleges that the trial court erred by denying his motion to depose Detective Stroble. He also contends that three of the community custody conditions the court imposed as part of his sentence were unlawful. We reject these arguments.

Zumwalt claims that the trial court should have ordered a deposition under CrR 4.6(a). He argues, "[T]he trial court interfered with the Sixth Amendment right of the defendant to choose counsel of his own choice, the Due Process right of the defense to control its own case preparation, and the Sixth Amendment right to control witnesses and compel process."

We review de novo an interpretation of a court rule.[1] A criminal defendant does not have a right to depose prospective witnesses before trial.[2] Under CrR 4.6(a), upon a party's motion, a court may order a deposition when "a witness refuses to discuss the case with either counsel and the witness' testimony is material and necessary."[3] Zumwalt describes the issue in this case as "whether

---

[1] State v. Mankin, 158 Wn. App. 111, 121-22, 241 P.3d 421 (2010) (citing State v. Robinson, 153 Wn.2d 689, 693, 107 P.3d 90 (2005)), review denied, 171 Wn.2d. 1003, 249 P.3d 182 (2011).

[2] Mankin, 158 Wn. App. at 121-22 (citing State v. Gonzalez, 110 Wn.2d 738, 744, 757 P.2d 925 (1988)).

[3] CrR 4.6(a)(2).

the refusal to discuss the case with Mr. Harris in the room falls within the meaning of the rule's requirement that the witness refuse to discuss the case with either counsel."

In State v. Mankin,[4] the court concluded that the "plain language" of CrR 4.6(a) "does not address instances in which the witness will speak to counsel only under certain circumstances." In Mankin, the witness was willing to discuss the case with counsel but refused to allow counsel to record the interview.[5] The court agreed with the defendant that "the ability of counsel to obtain evidence and to impeach witnesses effectively is part of his right to a fair trial."[6] But, the court explained, "[E]ven though the right to adequate trial preparation includes the right to interview witnesses in advance of trial, '[t]he right to interview a witness does not mean that there is a right to have a successful interview,'"[7] and "a witness may refuse to give an interview."[8] As such, the court held that "it is logical to conclude that a witness may also choose under what conditions he or she is willing to give an interview, including whether it should be recorded."[9]

Zumwalt acknowledges the court's holding in Mankin but argues, "The time has come to reanalyze the doctrine of the 'right' of witnesses to refuse to be

---

[4] 158 Wn. App. 111, 123, 241 P.3d 421 (2010), review denied, 171 Wn.2d 1003, 249 P.3d 182 (2011).

[5] Mankin, 158 Wn. App. at 115.

[6] Mankin, 158 Wn. App. at 123.

[7] Mankin, 158 Wn. App. at 123-24 (second alteration in original) (citations omitted) (quoting State v. Clark, 53 Wn. App. 120, 124, 765 P.2d 916 (1988)).

[8] Mankin, 158 Wn. App. at 124 (citing State v. Hofstetter, 75 Wn. App. 390, 397, 402, 878 P.2d 474 (1994)).

[9] Mankin, 158 Wn. App. at 124.

interviewed. There is no legal justification for the doctrine and it interferes with the right of the defendant to prepare his or her case." But the court in Mankin rejected a similar argument, and Zumwalt offers no authority to support a different result.[10]

Zumwalt further asserts, "It is not proper for the State or the State's witnesses to dictate who the defense uses as its expert witnesses," and "[f]orcing defense counsel to interview the detective without the assistance of its chosen expert witness was error." Zumwalt offers no evidence that the State dictated whom he used as an expert witness; rather, Stroble exerted his right to choose the conditions under which he was willing to give an interview.

The court properly denied Zumwalt's motion because it lacked authority to order a deposition under CrR 4.6(a). Stroble was willing to discuss the case with defense counsel and with an alternate investigator and was willing to have the interview recorded. Additionally, the record indicates that Zumwalt interviewed Stroble on June 21, 2011, and that the interview was recorded and transcribed.

Zumwalt also challenges three community custody conditions that the court imposed as part of his sentence. In Washington, a sentencing court must impose certain community custody conditions in specified circumstances and may impose others.[11] The discretionary conditions include requiring the offender to "[p]articipate in rehabilitative programs or otherwise perform affirmative

---

[10] See Mankin, 158 Wn. App. at 123.
[11] See RCW 9.94A.703; State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community," and to "[c]omply with any crime-related prohibitions."[12]

We review imposed community custody conditions for an abuse of discretion.[13] A trial court abuses its discretion if its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[14] Imposing an unconstitutional condition is manifestly unreasonable.[15] A party may raise a challenge to community custody conditions for the first time on appeal.[16]

Zumwalt alleges that the court erred by requiring him to "[s]ubmit to periodic polygraph examinations at own expense at the request of the Community Corrections Officer or treatment provider." In State v. Riles,[17] the defendants contended that the trial court lacked authority to require polygraph testing as a condition of community custody because the Sentencing Reform Act of 1981, chapter 9.94A RCW, did not specifically authorize or require such testing. Our Supreme Court agreed that no provision explicitly authorized or required polygraph testing but concluded, "A trial court has authority to impose monitoring conditions such as polygraph testing. Although the results of

---

[12] RCW 9.94A.703(3)(d), (f).

[13] State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010) (citing Bahl, 164 Wn.2d at 753).

[14] In re Estate of Black, 153 Wn.2d 152, 172, 102 P.3d 796 (2004) (internal quotation marks omitted) (quoting State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

[15] Sanchez Valencia, 169 Wn.2d at 792 (citing Bahl, 164 Wn.2d at 753).

[16] Bahl, 164 Wn.2d at 744-45.

[17] 135 Wn.2d 326, 340, 957 P.2d 655 (1998), overruled in part on other grounds by Sanchez Valencia, 169 Wn.2d at 792.

polygraph tests are generally not admissible in a trial, this Court has acknowledged their validity as an investigative tool."[18] Thus, polygraph testing is lawful to monitor an offender's compliance with crime-related prohibitions.[19]

Zumwalt argues that our Supreme Court overruled Riles in In re Detention of Hawkins[20] and State v. Sanchez Valencia.[21] These cases, however, did not address the court's holding in Riles that recognized polygraph testing as a valid community custody condition. The issue in Hawkins, which did not discuss Riles, was whether RCW 71.09.040(4) authorized the State to compel respondents in sexually violent predator commitment proceedings to submit to polygraph examinations as part of the pretrial evaluation.[22] The State does not allege that Zumwalt is a sexually violent predator and is not searching for evidence to prove such an allegation.

Sanchez Valencia argued that an imposed community custody condition was unconstitutionally vague.[23] Sanchez Valencia discussed Riles only to clarify

---

[18] Riles, 135 Wn.2d at 342 (citing State v. Sutherland, 94 Wn.2d 527, 528, 617 P.2d 1010 (1980)).

[19] See Riles, 135 Wn.2d at 343 (legislative amendments suggest intent "to confirm the practice of allowing testing, such as polygraphs, for monitoring compliance with sentencing conditions").

[20] 169 Wn.2d 796, 238 P.3d 1175 (2010).

[21] 169 Wn.2d 782, 239 P.3d 1059 (2010).

[22] Hawkins, 169 Wn.2d at 800-01.

[23] Sanchez Valencia, 169 Wn.2d at 785. The challenged condition stated, "'Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling and data storage devices.'"

that the court will not presume community custody conditions are constitutional.[24] That case did not concern polygraph examinations, and Zumwalt does not raise a vagueness challenge to the polygraph examination condition. Because <u>Riles</u> authorizes a court to order polygraph examinations as a condition of community custody and Zumwalt points to no authority overruling this holding, we reject his claim.

Zumwalt also asserts that two of the imposed community custody conditions are unconstitutionally vague. The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington State Constitution require that citizens have fair warning of proscribed conduct.[25] "A statute is unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'"[26] A condition that fails to meet either of these requirements is unconstitutionally vague.[27]

In determining whether a term is unconstitutionally vague, we consider the term in the context in which it is used.[28] When a statute does not define a term,

---

[24] <u>Sanchez Valencia</u>, 169 Wn.2d at 792 ("While <u>Riles</u> indicated a presumption in favor of the constitutionality of a community custody condition, this was error.").

[25] <u>Bahl</u>, 164 Wn.2d at 752 (citing <u>City of Spokane v. Douglass</u>, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

[26] <u>Bahl</u>, 164 Wn.2d at 752-53 (alterations in original) (quoting <u>Douglass</u>, 115 Wn.2d at 178).

[27] <u>Bahl</u>, 164 Wn.2d at 753.

[28] <u>Bahl</u>, 164 Wn.2d at 754 (citing <u>Douglass</u>, 115 Wn.2d at 180).

we may consider the plain and ordinary meaning as set forth in a standard dictionary.[29] A condition of community custody is sufficiently definite if persons of ordinary intelligence can understand what it proscribes, "'notwithstanding some possible areas of disagreement.'"[30]

Zumwalt contends that the court erred when it ordered him not to "loiter or frequent places where children congregate, including but not limited to shopping malls, schools, playground[s] or video arcades." He argues that the term "shopping malls" is unconstitutionally vague.

RCW 9.94A.703(3)(b) permits a court, as a condition of community custody, to order an offender to "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." In Riles, the court rejected a vagueness challenge to the imposed condition, "[Do] not frequent places where minors are known to congregate."[31] The court reasoned that the condition applied "to places where children commonly assemble or congregate."[32]

Here, within the context of the entire condition, the term "shopping malls" is not unconstitutionally vague. Persons of common intelligence would understand the condition to prohibit Zumwalt from going to places where children commonly assemble, and the examples create a more precise prohibition than

---

[29] Bahl, 164 Wn.2d at 754 (citing State v. Sullivan, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001)).

[30] Bahl, 164 Wn.2d at 754 (quoting Douglass, 115 Wn.2d at 179).

[31] Riles 135 Wn.2d at 349.

[32] Riles 135 Wn.2d at 349 (citing former RCW 9.94A.120(9)(c)(ii) (1997), the statute in effect at the time of the charging period).

the prohibition upheld in Riles. Therefore, we hold that this condition is not impermissibly vague.

Zumwalt also challenges the imposed condition ordering him "[n]ot to possess or access any sexually explicit material or frequent adult bookstores, arcades or places where sexual entertainment is provided and shall not access pornography . . . via the computer." He argues that our Supreme Court found the term "sexually explicit material" unconstitutional in State v. Bahl.[33]

In Bahl, the defendant argued that the term "sexually explicit material" was unconstitutional as used in the condition prohibiting him from frequenting "'establishments whose primary business pertains to sexually explicit or erotic material.'"[34] In fact, contrary to Zumwalt's assertion, the court held that the term was "sufficiently clear."[35] The court stated, "Implementing the dictionary definition, the phrase . . . is 'clearly expressed sexual' materials or materials that are unequivocally sexual in nature."[36] Additionally, the court noted that "'[i]mpossible standards of specificity' are not required since language always involves some degree of vagueness."[37] Based on this analysis, we hold that the term "sexually explicit materials" is not unconstitutionally vague.

Although Zumwalt does not assign error to the term "pornography" as used in this condition, the State concedes that the court in Bahl found this term

---

[33] 164 Wn.2d 739, 193 P.3d 678 (2008).

[34] Bahl, 164 Wn.2d at 758-59.

[35] Bahl, 164 Wn.2d at 759.

[36] Bahl, 164 Wn.2d at 759.

[37] Bahl, 164 Wn.2d at 759 (internal quotation marks omitted) (quoting State v. Halstien, 122 Wn.2d 109, 118, 857 P.2d 270 (1993)).

unconstitutionally vague.[38]  We grant the State's request to strike this term from the judgment and sentence.

## Conclusion

Because the witness was willing to discuss the case with defense counsel, the trial court properly declined Zumwalt's motion to depose him.  Although the term "pornography" is unconstitutionally vague, the imposed community custody conditions are otherwise lawful.  For these reasons, we remand for the limited purpose of striking the term "pornography" from the judgment and sentence and otherwise affirm.

_Leach, C.J._

WE CONCUR:

_Dwyer, J._                     _Appelwick, J._

---

[38] See Bahl, 164 Wn.2d at 758 ("We conclude that the restriction on accessing or possessing pornographic materials is unconstitutionally vague.").